# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER WEST,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:20-CV-01263-NCC<br>) |
| **KILOLO KIJAKAZI,**[1]<br>**Acting Commissioner of Social Security,** | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Christopher West ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 21), and Defendant has filed a brief in support of the Answer (Doc. 26). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on November 30, 2017 (Tr. 193-94). Plaintiff was initially denied on February 15, 2018, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 130-38). After a hearing, by decision dated September 10, 2019, the ALJ found Plaintiff not disabled (Tr. 12-28). On July 17, 2020, the Appeals

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act on December 31, 2017, and did not engage in substantial gainful activity during the period from his alleged onset date of April 7, 2017, through his date last insured of December 31, 2017 (Tr. 17). The ALJ found, through the date last insured, Plaintiff had the following impairments, which are severe in combination: post-traumatic stress disorder ("PTSD"), mood disorder, alcohol abuse, residuals of a gunshot wound to the abdomen, small bimalleolar spurs of the ankle and mild concussion symptoms, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18). After considering the entire record, the ALJ determined Plaintiff had the residual functional capacity ("RFC"), through the date last insured, to perform medium work with the following limitations (Tr. 20). Plaintiff is able to perform simple, routine tasks, but can have only minimal changes in job setting and duties (*Id.*). Plaintiff should have no management of customer complaints, no fast-paced production work, no contact with the general public, and only occasional contact with coworkers and supervisors (*Id.*). The ALJ found that Plaintiff was unable to perform any past relevant work but that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed including the following representative occupations: Cleaner II, Equipment Cleaner, and Salvage Laborer (Tr. 25). Thus, the ALJ concluded that Plaintiff was not under a disability at any time from April 7, 2017, the alleged onset date, through December 31, 2017, the date last insured (Tr. 25-26).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. § 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a

3

claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. § 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-

finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues.  First, Plaintiff asserts that the ALJ's RFC decision is not supported by substantial evidence as it fails to consider all the substantial medical evidence of record or to be based on "some" medical evidence as required under the standards contained in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001).  Specifically, Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence of record (Doc. 21 at 9-17).  Second, Plaintiff argues the ALJ failed to properly evaluate his subjective complaints (*Id.* 18-21).  Third, Plaintiff asserts that the ALJ failed to meet her burden at step 5 because the decision does not indicate any evaluation of Plaintiff's need for a service animal or how that limitation would impact Plaintiff's ability to adjust to other work in the national economy (*Id.* at 21-25).  Because the ALJ improperly evaluated the medical opinion evidence from Kermit Johnson, Jr., RN, Plaintiff's mental health intensive case manager, the Court will address that issue alone.

The new Social Security regulations regarding the evaluation of medical opinion evidence applied to Plaintiff's case because he filed his application after March 27, 2017.  20 C.F.R. § 404.1520c.  Under the new regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians.  20 C.F.R. § 404.1520c(a).  Rather, the ALJ is to consider factors in determining how persuasive to find medical opinions and prior administrative medical

5

findings.  20 C.F.R. § 404.1520c(b).  An ALJ must explain how she considered the factors of supportability and consistency in her decision, but need not explain how she considered the other factors.  20 C.F.R. § 404.1520c(b)(2).  The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

  The medical record includes two separate opinions or statements that address Plaintiff's mental health conditions.  The first, from Mark Altomari, Ph.D. ("Dr. Altomari"), a non-examining state agency psychologist, is dated February 14, 2018, and was conducted as a part of the initial review of Plaintiff's file (Tr. 102-04).  Dr. Altomari opined that Plaintiff's trauma and stressor-related disorders and his depressive, bipolar and related disorders were severe impairments (Tr. 103).  Dr. Altomari opined that Plaintiff has no limitation in the ability to adapt or manage oneself and moderate limitations in the ability to understand, remember, or apply information; the ability to interact with others; and the ability to concentrate, persist, or maintain pace (Tr. 104).  In support of his opinion, Dr. Altomari detailed the medical record up to that point, which he noted was limited at the time, and found that "there is no evidence of worsening of functioning or psychiatric [symptoms]" since the prior disability decision on April 6, 2017 (Tr. 104).  Dr. Altomari further indicated that mental status exams show normal speech, insight, judgment, and Plaintiff self-reports that he is doing well with no PTSD symptoms (*Id.*).  Dr.

6

Altomari also noted Plaintiff's self-reported activities of daily living, stating that Plaintiff shops, drives, cares for his daughter on his weekends, and is able to do household chores (*Id.*). Thus, Dr. Altomari concluded, "[w]ith limited evidence and no worsening of impairment, [Plaintiff] would continue to be able to perform and persist with at least simple tasks, with limited contact with the public and coworkers, in a non-complex work environment" (*Id.*).

The ALJ considered the opinion of Dr. Altomari and found it to be "mostly persuasive" (Tr. 23-24). The ALJ found the specific limits cited by Dr. Altomari to be consistent with the evidence and persuasive (Tr. 23). However, the ALJ found Dr. Altomari's opinion inaccurate as it related to two areas of functioning. Specifically, the ALJ determined that "the evidence shows only a mild limitation in [Plaintiff's] ability to maintain concentration, persistence, or pace, as he is often noted to be perform[ing] complex tasks" (Tr. 23-24). The ALJ also found Plaintiff to be more limited in the area of adapting and managing oneself, noting that Plaintiff "is often noted to be drinking alcohol despite recommendations that he stop doing so" (Tr. 24).

Next, Kermit Johnson, Jr., RN ("Mr. Johnson"), Plaintiff's mental health intensive case manager, submitted two letters and testified at the administrative hearing on Plaintiff's behalf. On December 20, 2017, Mr. Johnson wrote a letter indicating that Plaintiff was participating in the Mental Health Intensive Case Management ("MHICM") program through the Veteran Affairs Medical Center (Tr. 700). According to Mr. Johnson, the MHICM assists veterans such as Plaintiff who have been diagnosed with a serious mental illness and have had 3 or more frequent and/or long-term psychiatric hospitalizations within a 12-month period (*Id.*). Plaintiff has been enrolled in the program since February 2016 (*Id.*). Plaintiff is 70% "service

7

connected"[2] but is considered 100% "service connected" due to VA unemployability (*Id.*).  Mr. Johnson detailed Plaintiff's three inpatient psychiatric hospitalizations from 2015 and noted that since enrolling in the MHICM, Plaintiff has met with his case manager, Mr. Johnson, approximately 90 times, the psychiatrist for medication management and mental health evaluations approximately 13 times, and has also had approximately 5 suicide risk assessments completed to ensure safety (*Id.*).  By way of example, Mr. Johnson indicated that in the month of December 2017, Plaintiff was scheduled for 5 mental health appointments, 1 with the psychiatrist, 1 with a psychologist, and 3 with Mr. Johnson (*Id.*).  Similarly, on February 5, 2019, Mr. Johnson wrote a letter indicating that Plaintiff continued to participate in the MHICM program (Tr. 286).  Mr. Johnson again noted that since enrolling in the MHICM, Plaintiff meets with his case manager, Mr. Johnson, approximately 40 times a year, the psychiatrist for medication management and mental health evaluations approximately 6 times a year and has been evaluated for suicide risk 5 times (*Id.*).

During Plaintiff's June 12, 2019 administrative hearing, Mr. Johnson testified on Plaintiff's behalf (Tr. 51-54).  Mr. Johnson testified to the extent of his relationship with Plaintiff, indicating that he is Plaintiff's mental health intensive case manager at the VA hospital and has been for the past two and a half, almost three, years (Tr. 51).  Mr. Johnson sees Plaintiff approximately two to three times a month, which averages to about 40 times a year (Tr. 52).  Mr. Johnson reported that Plaintiff was unstable (*Id.*).  As a result of his outbursts, Mr. Johnson testified that he had seen damaged walls—"holes in his living room and his back room the TV

---

[2] "Service connected" refers to the Veterans Affairs' ("VA") disability program in which the VA provides compensation, a monthly tax-free payment, to veterans who got sick or injured while serving in the military and to veterans whose service made an existing condition worse.  *See* U.S. Dep't of Veterans Affs., *VA disability compensation*, https://www.va.gov/disability/ (Nov. 23, 2021).

room, throughout his house" (*Id.*).  As a part of Plaintiff's treatment plan, the team removed all the weapons from his home including his hunting weapons and the hatchets that he made in order to make the home a safer environment where Plaintiff did not have access to lethal means (*Id.*).  Mr. Johnson then noted that Plaintiff has a history of a suicide attempt in the past using a weapon (Tr. 53).  Mr. Johnson also reported clutter in Plaintiff's home including items that would normally be outside projects and alcohol on the coffee table at 10:00 a.m. (*Id.*).

The ALJ found Mr. Johnson's opinion, including his testimony, to be "unpersuasive" (Tr. 24).  Specifically, the ALJ noted that Mr. Johnson's letters provide no specific limitations and simply detail the frequency of his mental health treatment (*Id.*).  The ALJ then correctly noted in significant detail that a VA disability rating is another governmental agency's adjudicative finding based on its own rules and is not a medical opinion nor is it binding on the Social Security Administration (*Id.*).  *See* 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules."); 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  The ALJ found Mr. Johnson's testimony to conflict directly with his notes which indicated that Plaintiff was generally within normal limits and continued to have access to weapons including after his date last insured (*Id.*).  The ALJ further indicated that Mr. Johnson only mentions the clutter in Plaintiff's house on one occasion (*Id.*).  Thus, the ALJ concluded, in

9

the context of his treatment notes, Mr. Johnson generally indicates the Plaintiff's symptoms are overall stable and most of his mental health observations are within normal limits (*Id.*).

The Court finds that the ALJ failed to properly consider the mental health opinion evidence of record and, in light of this failure, also failed to properly support her RFC determination as to Plaintiff's mental health impairments. As a preliminary matter, Defendant correctly notes that the statements and testimony from Mr. Johnson are not medical opinions under the rules. A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations" in the following relevant areas, "your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2). Once Mr. Johnson's statements are excluded, the only remaining opinion regarding Plaintiff's mental health condition is that of Dr. Altomari. However, the ALJ failed to appropriately consider the supportability of Dr. Altomari's opinion. In articulating how she considered the supportability factor, an ALJ may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, that the physician did not examine the claimant, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases). Here, the ALJ did not address any of these matters and did not apparently articulate how she considered the supportability factor. Dr. Altomari indicated in his opinion that there was limited medical record support from the relevant time period upon which his opinion is based and only listed three specific records from

10

the period in his review.  However, records from that period, perhaps subsequently submitted, include a detailed treatment plan indicating that Plaintiff had been having thoughts of suicidal ideation, ineffective coping related to severe depression as evidenced by angry outbursts, and an inability to limit alcohol intake for which his case manager created goals and objectives (Tr. 336-37).  *See* Tr. 346 (noting that Plaintiff's treatment plan need regarding suicidal ideation was updated on November 24, 2017).  Treatment for these identified problems included, "at minimum, weekly contact with providers" (Tr. 725).  While Plaintiff is noted as being appropriately dressed and friendly, his case manager also found him to be depressed and irritable and his psychologist noted Plaintiff "appeared sustainable as an outpatient" that he will "continue to be followed in the MHICM program" (Tr. 718-19, 723).  Plaintiff also received and uses a service dog, Ziva, with whom he travels everywhere (Tr. 40).  It appears that since the period at issue, Plaintiff's mental health status has not stabilized.  For example, Plaintiff has needed to increase his medication due to heightened anxiety and irritability and has continued to need counseling as it relates to his use of alcohol (Tr. 292, 300, 903, 944).  Plaintiff's brother and sister-in-law appear to have been providing significant support to Plaintiff in his activities of daily living including medication reminders and grocery shopping and, at one point, they considered applying for the CareGiver Support Program (Tr. 1002-03).  Plaintiff also lost his right to have guns in his home for a period of time (Tr. 308, 819, 825, 830).  Further, while Mr. Johnnson's statements were not medical opinions, the ALJ failed to address the apparent conflict between his statements and those of Dr. Altomari, especially regarding specific, concrete examples of Plaintiff's mental health condition provided by Mr. Johnson during the administrative hearing.  Indeed, Mr. Johnson indicates elsewhere in the record that he assisted Plaintiff with at least one form, noting that Plaintiff needed help because he was "unable to

11

concentrate and follow instructions.  Veteran became extremely anxious and irritated.  Crisis intervention was needed to keep veteran calm" (Tr. 248).  It is also telling the nature and extent of Plaintiff's involvement in the MHICM program alone, requiring five separate visits in the month of December 2017, as it would clearly impact Plaintiff's absenteeism.  Neither the ALJ nor Plaintiff's attorney took the opportunity at the hearing to ask Mr. Johnson about how these issues would translate into work related limitations.  The ALJ retains the responsibility to develop a full and fair record in the non-adversarial proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

### V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded.  On remand, the ALJ is directed to reevaluate the medical opinion evidence of record, obtain a medical opinion from Kermit Johnson, Jr., RN, if possible, and Plaintiff's current treating mental health provider; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 23rd day of February, 2022.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE